IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RASHAI HARMON, | § | |
| | § | Nos. 13, 2016 & 14, 2016 |
| Defendant Below, | § | Consolidated |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID Nos. 0805010747 & |
| | § | 1503003016 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: July 1, 2016
Decided: September 8, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

## **O R D E R**

This 8th day of September 2016, upon consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record below, it appears to the Court that:

(1)     On July 16, 2007, Harmon pled guilty to Possession with Intent to Deliver a Schedule II Narcotic ("PWITD").  Harmon was sentenced to eight years of Level V incarceration, with credit for time previously served, suspended after one year for eighteen months of Level III probation.  Sentencing was deferred for the Boot Camp Diversion Program.

(2)     On June 3, 2008, Harmon pled guilty to Possession of a Narcotic and Resisting Arrest.  Harmon was sentenced to a total of two years of Level V

incarceration, suspended for one year of Level III probation. The Superior Court also found that Harmon committed a violation of probation ("VOP") for his PWITD conviction, vacated the Boot Camp sentence, and reinstated the original PWITD sentence.

(3) On March 3, 2009, the Superior Court found Harmon had violated his probation for his PWITD, Possession of a Narcotic, and Resisting Arrest convictions. Harmon was sentenced as follows: (i) for PWITD, seven years of Level V incarceration, with credit for time previously served, suspended upon successful completion of the Key Program for one year of Level IV Residential Substance Abuse Treatment, suspended upon successful completion for eighteen months of Level III Aftercare; and (ii) for Resisting Arrest, one year of Level V incarceration, suspended for one year of Level III Aftercare. Harmon was discharged as unimproved for Possession of a Narcotic.

(4) On August 21, 2012, Harmon pled guilty to Escape After Conviction and Resisting Arrest. Harmon was sentenced as follows: (i) for Escape After Conviction, eight years of Level V incarceration, suspended after two years for one year of Level III probation; and (ii) for Resisting Arrest, one year of Level V incarceration, suspended for one year of Level III probation. The Superior Court also found Harmon had violated his probation and sentenced him as follows: (i) for PWITD, five years of Level V, with credit for time previously served, suspended

for fifteen months of Level III probation; and (ii) for Resisting Arrest, one year of Level V incarceration, suspended for one year of Level III probation.

(5)    On December 23, 2014, the Superior Court issued a capias for Harmon based on new, alleged VOPs.  These VOPs arose from, among other things, Harmon's alleged commission of new criminal offenses and failure to report for office visits.  On March 7, 2015, Harmon disregarded the Delaware State Police's attempts to pull him over and led the police on a high speed chase.  After the police discontinued their pursuit, Harmon collided with an SUV.  One of the SUV passengers was killed in the crash.

(6)    The police apprehended Harmon as he fled the scene of the accident. The police found drugs and $2,000 in the car Harmon was driving.  Harmon was indicted for multiple crimes, including Murder in the Second Degree.  Harmon's probation officer also filed another VOP report alleging that, based on the March 7, 2015 events, Harmon had violated his probation by committing new crimes and possessing drugs.

(7)    On October 20, 2015, Harmon pled guilty to Manslaughter as a lesser included offense of Murder in the Second Degree, Reckless Endangering in the First Degree, and Disregarding a Police Officer's Signal.  After a presentence investigation, the Superior Court sentenced Harmon as follows: (i) for Manslaughter, twenty-five years of Level V incarceration, suspended after sixteen

3

years and successful completion of the Key Program, followed by decreasing levels of supervision; (ii) for Reckless Endangering in the First Degree, five years of Level V incarceration without the benefit of early release under 11 *Del. C.* § 4204(k); and (iii) for Disregarding a Police Officer's Signal, two years of Level V incarceration, with credit for time previously served, without the benefit of early release under 11 *Del. C.* § 4204(k). The Superior Court also found that Harmon violated his probation and sentenced him to one year of Level V incarceration for each of his Resisting Arrest convictions. The Superior Court discharged Harmon as unimproved for his Escape After Conviction and PWITD convictions.

(8) On January 8, 2016, Harmon filed notices of appeal from the sentences for his new convictions and VOPs. We granted Harmon's motions to consolidate the appeals. On June 10, 2016, Harmon's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c) ("Rule 26(c)"). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Harmon of the provisions of Rule 26(c) and provided Harmon with a copy of the motion to withdraw and the accompanying brief.

(9) Counsel also informed Harmon of his right to identify any points he wished this Court to consider on appeal. Harmon has raised several issues for this

4

Court's consideration. The State has responded to the issues raised by Harmon and asked this Court to affirm the Superior Court's judgment.

(10) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

(11) Harmon's points on appeal may be summarized as follows: (i) he did not violate his probation because he was not charged with drug possession; (ii) he expected his sentence to be capped and his family was told that he would be sentenced to no more than ten years of Level V incarceration; (iii) he should have been charged with Driving Under the Influence as a lesser included offense; (iv) the statement of the SUV driver after the accident and the medical history of the SUV passenger who was killed should be reviewed; (v) the Superior Court judge sentenced him with a closed mind; (vi) he would like concurrent rather than consecutive sentences and removal of the Section 4204(k) conditions; and (vii) he does not understand why he is incarcerated while a police officer who allegedly

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

engaged in misconduct is not incarcerated. After careful consideration, we find no merit to Harmon's appeal.

(12) Because Harmon did not argue below that a lack of drug possession charges meant he could not have violated his probation, we review this claim for plain error.[2] At sentencing, Harmon's trial counsel told the Superior Court that Harmon admitted his VOP. Harmon did not object or contradict his counsel's representation. Even in the absence of a drug charge, Harmon could be properly adjudicated to have violated his probation by possessing drugs.[3] Finally, Harmon disregards that his VOP was based not only on the drugs found in his car on March 7, 2015, but also on his commission of new crimes. Harmon cannot, and does not, dispute that he committed new crimes on March 7, 2015. Under these circumstances, there is no evidence of plain error.

(13) We construe Harmon's contentions that he thought his sentence would be capped and that his family was told he would be sentenced to no more than ten years as an argument that his guilty plea was not knowing, intelligent, and voluntary. The record belies this claim. During the guilty plea colloquy, Harmon affirmed that he had reviewed the Truth–In–Sentencing Guilty Plea form (which did not include a sentencing recommendation by the State) with his counsel, no one forced him to enter into the plea agreement or promised him what his sentence

---

[2] Supr. Ct. R. 8.
[3] *Kurzmann v. State*, 903 A.2d 702, 716-17 (Del. 2006).

6

would be, he was guilty of Manslaughter, Reckless Endangering in the First Degree, and Disregarding a Police Officer's Signal, he understood he was giving up certain constitutional rights by pleading guilty, and he understood that the Superior Court could sentence him to up to thirty-two years of imprisonment. Absent clear and convincing evidence to the contrary, which he has not identified, Harmon is bound by his representations during the guilty plea colloquy and in the Truth-in-Sentencing Guilty Plea Form.[4]

(14)  As to Harmon's contention that he should have been charged with Driving Under the Influence as a lesser included offense, a voluntary and intelligent plea, like Harmon's, constitutes a waiver of alleged defects or errors occurring before entry of the plea.[5]  We also note that this claim is contrary to the representations of Harmon's counsel at sentencing.  During sentencing, Harmon's counsel disputed allegations in the indictment that Harmon was driving under the influence of alcohol or drugs.  According to Harmon's counsel, a confirmatory test showed no cocaine or cannabis in Harmon's blood.

(15)  Harmon's request for a review of the SUV driver's statement after the accident and the medical background of the SUV passenger who died appears to be an attempt to challenge his role in the crimes.  This claim is subject to plain error

---

[4] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).
[5] *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003).

7

review.[6] Harmon waived his right to challenge the strength of the State's evidence against him when he entered a knowing, intelligent, and voluntary guilty plea.[7] Harmon is also bound by his representations during the guilty plea colloquy that he was guilty of Manslaughter, Reckless Endangering in the First Degree, and Disregarding a Police Officer's Signal.[8] There is no plain error here.

(16) Harmon's challenges to the sentences for his new convictions are without merit. "Appellate review of a sentence is limited to whether the sentence is within the statutory limits prescribed by the General Assembly and whether it is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind."[9] In this case, Harmon pled guilty to three felonies that carried a maximum penalty of thirty-two years of Level V incarceration. Harmon was sentenced to a total of thirty-two years of Level V incarceration, suspended after twenty-three years. This sentence does not exceed the statutory limits.

(17) Harmon argues that the Superior Court judge sentenced him with a closed mind because the judge stated that he believed the drugs and the money in the car belonged to Harmon and that Harmon was out to kill someone. "A judge sentences with a closed mind when the sentence is based on a preconceived bias

---

[6] Supr. Ct. R. 8.
[7] *Brown v. State*, 108 A.3d 1201, 1202 (Del. 2015); *Miller*, 840 A.2d at 1232.
[8] *Somerville v. State*, 703 A.2d at 632.
[9] *Weston v. State*, 832 A.2d 743, 746 (Del. 2003).

without consideration of the nature of the offense or the character of the defendant."[10]  At sentencing, Harmon's counsel argued, among other things, that certain allegations in the indictment created a misleading impression of Harmon as a drug dealer.  According to Harmon's counsel, the drugs in the car belonged to Harmon's girlfriend, not Harmon, and the $2,000 cash in the car belonged to Harmon's sister.  Counsel also suggested that Harmon's girlfriend urged him to disregard the police officer's signal to pull over.

(18)   The Superior Court judge rejected these arguments, indicating that he believed the drugs and cash in the car belonged to Harmon.  The Superior Court judge noted that Harmon told the police the last thing he remembered before the crash was his girlfriend telling him to pull over, which contradicted the suggestion that the girlfriend told Harmon to flee the police.  The Superior Court judge emphasized that he was not punishing Harmon for drug dealing, but that he was concerned by Harmon's history of resisting arrest and leading police on high-speed chases that endangered the lives of others.  The record reflects that the sentence was based on the nature of Harmon's crimes and does not support Harmon's claim that the Superior Court judge had a closed mind.  As to Harmon's request for concurrent, rather than consecutive, sentences and removal of the Section 4204(k) condition on his Reckless Endangering in the First Degree and Disregarding a

---

[10] *Id.*

9

Police Officer's Signal sentences, Harmon does not identify, and we do not find, any error by the Superior Court in the imposition of consecutive sentences and the Section 4204(k) conditions.

(19) Finally, Harmon questions why he is incarcerated while a police officer who allegedly engaged in misconduct is not incarcerated. Although Harmon may feel aggrieved that someone else is not in prison for something that other person allegedly did wrong, that does not provide any basis for Harmon to escape punishment for the serious crimes to which he pled guilty.[11]

(20) Having carefully reviewed the record, we conclude that Harmon's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Harmon could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

[11] Harmon has provided no evidence to support his contention about the situation to which he adverts, and there is no proper basis for us to examine that situation in this case. In other words, whether a situation occurred of the nature Harmon identifies and whether it involved any wrong by a law enforcement officer cannot be determined from this record, even if those issues were relevant in this case, which they are not.